UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> SAFRAN, S.A., <br><br> SAFRAN USA INC., <br><br> and <br><br> RTX CORPORATION, <br><br> *Defendants*. | |

**ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER**

It is hereby stipulated by and among the undersigned parties, subject to approval and entry of this Order by the Court, as follows.

I.  **DEFINITIONS**

As used in this Asset Preservation and Hold Separate Stipulation and Order ("Stipulation and Order"):

A.  "Safran" means Defendant Safran S.A., a French corporation with its headquarters in Paris, France, its successors and assigns, and its subsidiaries, including Defendant Safran USA Inc., divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.  "RTX" means Defendant RTX Corporation, a Delaware corporation with its headquarters in Arlington, Virginia, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Woodward" means Woodward, Inc., a Delaware corporation with its headquarters in Fort Collins, Colorado, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.  "Acquirer" means Woodward.

E.  "Divestiture Business" means (1) Safran's North American actuation business, including the entirety of the business activities and assets engaged in the development, manufacture, and sale of trimmable horizontal stabilizer actuators ("THSAs"), secondary flight control actuation products and nose-wheel steering gearboxes; and (2) Safran Electronics & Defense, Canada Inc. ("SEDC"), Safran's Canada-based electronic control units business.

F.  "Divestiture Assets" means all of Defendant Safran's rights, titles, and interests in and to all property and assets related to the Divestiture Business, tangible and intangible, wherever located, relating to or used in connection with the Divestiture Business, including:

   1.  the long-term leases for the facilities located at 2000 and 2020 Fisher Dr., Peterborough, ON K9J 6X6, Canada;

   2.  the Transitional Safran Brands License;

   3.  all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

   4.  all tangible personal property, including fixed assets, machinery and

manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

    5.  all contracts, contractual rights, and customer relationships (including contracts for the supply of THSAs to Airbus, S.E), and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

    6.  all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

    7.  all records and data, including (a) customer lists, accounts, sales, and credits records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendant Safran provides to its own employees, customers, suppliers, agents, or licensees, (d) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments, and (e) drawings, blueprints, and designs;

    8.  all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

    9.  all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications

for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, (d) design tools and simulation capabilities, and (e) rights in internet web sites and internet domain names.

*Provided, however*, that the assets specified in Paragraphs II.F.1–9 above do not include the Excluded Assets.

G. "Divestiture Date" means the date on which the Divestiture Assets are divested to Acquirer pursuant to this Final Judgment.

H. "Excluded Assets" means (1) the interests in the facilities located at Av. Sierra San Agustín 2498, Col el Porvenir, Parque Industrial Progreso, and 21185 Mexicali, B.C., Mexico and 1833 Alton Parkway, Irvine, California, United States; (2) any intellectual property associated with the brand names Safran and SEDA; and (3) the contracts to supply: (i) Virgin Galactic with the mechanical portion of an electromechanical THSA actuator (on a build to print basis), (ii) the signal interface unit for user ("SIFU") remote data concentrator for Archer Aviation, Inc., (iii) the French legacy THSA activity consisting of original equipment THSAs produced at Safran's facilities in Mantes, Fougères, Montluçon, and Auxerre, France, for the Embraer KC-390 Millenium, the Bombardier CL650, the Pilatus PC-24 and the Piaggio P.180; (iv) the maintenance, repair, and operation services and related spare parts for the Mitsubishi Heavy Industries (MHI) CRJ family; and (v) Bell with actuation products unrelated to THSAs for helicopters.

I. "Including" means including, but not limited to.

J. "Regulatory Approvals" means (1) any approvals or clearances from the Committee on Foreign Investment in the United States ("CFIUS") or under antitrust or competition laws that are required for the Transaction to proceed; and (2) any approvals or

clearances under antitrust or competition laws that are required for Acquirer's acquisition of the Divestiture Assets to proceed.

K.  "Relevant Personnel" means (1) all full-time, part-time, or contract employees, wherever located, whose job responsibilities relate in any way to the Divestiture Business at any time between June 14, 2023, and the Divestiture Date and (2) the employees in the positions listed in Schedule A. The United States, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

L.  "Transaction" means the proposed acquisition of part of Collins Aerospace flight control and actuation business from RTX by Safran.

M.  "Transitional Safran Brands License" means a non-exclusive, non-transferrable, non-sublicensable, fully paid-up, worldwide license to use the marks "Safran" and "SEDA" in connection with the products and services provided under the agreements described in Section IV.K of the proposed Final Judgment for a time period equal to the duration of those agreements and any extensions approved by the United States and a non-exclusive, non-transferrable, non-sublicensable, fully paid-up, worldwide license to use the name "SEDC" for 180 days from the Divestiture Date.

## II.   OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure the prompt divestiture of the Divestiture Assets for the purpose of establishing a viable competitor in the development, manufacture, and sale of THSAs worldwide by Woodward in order to remedy the anticompetitive effects that the United States alleges would otherwise result from the Transaction. This Stipulation and Order ensures that, prior to divestiture, the Divestiture Assets remain independent, economically viable, competitive, and saleable; that Defendants will

preserve and maintain the Divestiture Assets; and that the level of competition that existed between Defendants prior to the Transaction is maintained during the pendency of the required divestiture of the Divestiture Assets.

### III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties to it. Venue for this action is proper in the United States District Court for the District of Columbia. Defendants waive service of summons of the Complaint.

### IV. CONSUMMATION OF THE TRANSACTION

Defendants will not consummate the Transaction before the Court has signed this Stipulation and Order.

### V. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.  The proposed Final Judgment filed with this Stipulation and Order, or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants, may be filed with and entered by the Court as the Final Judgment, upon the motion of the United States or upon the Court's own motion, after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or any other proceeding, as long as the United States has not withdrawn its consent. The United States may withdraw its consent at any time before the entry of the Final Judgment by serving notice on Defendants and by filing that notice with the Court.

B.  From the date of the signing of this Stipulation and Order by Defendants until the Final Judgment is entered by the Court, or until expiration of time for all appeals of any ruling declining entry of the proposed Final Judgment, Defendants will comply with all of the terms and provisions of the proposed Final Judgment.

C.     From the date on which the Court enters this Stipulation and Order, the United States will have the full rights and enforcement powers set forth in the proposed Final Judgment as if the proposed Final Judgment were in full force and effect as a final order of the Court, and Section XIV of the proposed Final Judgment will also apply to violations of this Stipulation and Order.

D.     Defendants agree to arrange, at their expense, publication of the newspaper notice required by the APPA, which will be drafted by the United States in its sole discretion. The publication must be arranged as quickly as possible and, in any event, no later than three business days after Defendants' receipt of (1) the text of the notice from the United States and (2) the identity of the newspaper or newspapers within which the publication must be made. Defendants must promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged and (2) the certification of the publication prepared by the newspaper or newspapers within which the notice was published.

E.     Any person who wishes to submit to the United States written comments regarding the proposed Final Judgment should do so within 60 calendar days beginning with the first day of the publication of the newspaper notice required by APPA or the publication of the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* as required by APPA, whichever is later.

F.     This Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the United States and Defendants and filed with the Court.

G.     Defendants represent that the divestiture ordered by the proposed Final Judgment can and will be made and that Defendants will not later raise a claim of mistake, hardship, or

difficulty of compliance as grounds for asking the Court to modify any provision of the proposed Final Judgment or this Stipulation and Order.

      H.      This Stipulation and Order, including the proposed Final Judgment filed with this Stipulation and Order or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants, constitutes the final, complete, and exclusive agreement and understanding among the United States and Defendants with respect to the settlement of the claims expressly stated in the Complaint filed in this above-captioned case, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## VI. ASSET PRESERVATION AND HOLD SEPARATE

From the date of the signing of this Stipulation and Order by Defendants and until the divestiture required by the proposed Final Judgment has been accomplished:

      A.      Safran must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the Divestiture Assets, including by (1) operating the Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit.

      B.      Safran must use all reasonable efforts to maintain and increase the sales and revenues of the products provided by the Divestiture Assets and must maintain at 2024 or previously approved levels for 2025, whichever are higher, all promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the Divestiture Assets.

      C.      Defendants must use all reasonable efforts to maintain and preserve existing relationships with customers, suppliers, governmental authorities, vendors, landlords, creditors,

agents, and all others having business relationships relating to the Divestiture Assets and the lease or assignment of a lease for Suite 3, Section 1 on the first floor of 1733 Alton Parkway, Irvine, California 92614 referenced in Paragraph IV.M of the proposed Final Judgment.

D. Safran must maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

E. Safran must maintain the working conditions, staffing levels, and workforce training and expertise of all Relevant Personnel. Relevant Personnel must not be transferred or reassigned except to Acquirer or via transfer bids initiated by employees pursuant to Safran's regular, established job posting policy. Safran must provide the United States with ten (10) calendar days' notice of the transfer of Relevant Personnel, and, upon objection by the United States to such transfer, Relevant Personnel may not be transferred or reassigned. Safran must use all reasonable efforts, including by providing financial incentives, to encourage Relevant Personnel, to continue in the positions held as of the date of the signing of this Stipulation and Order by Defendants, and financial incentives may not be structured so as to disincentivize employees from accepting employment with Acquirer.

F. Safran must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets and must operate the Divestiture Assets in compliance with all regulatory obligations and requirements.

G. Safran must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and level of sales, with the same level of quality, functionality, access, and customer support, and must, consistent with past

practices, maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

H. Except as approved by the United States in accordance with the terms of the proposed Final Judgment, Defendants must not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets.

I. Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

J. Management, sales, and operations of the Divestiture Assets must be held entirely separate, distinct, and apart from Defendants' other operations, *provided, however,* that employees of Defendant Safran may operate the portion of the Divestiture Assets located at Av. Sierra San Agustín 2498, Col el Porvenir, Parque Industrial Progreso, and 21185 Mexicali, B.C., Mexico, facilities in accordance with Paragraph IV.K of the proposed Final Judgment. Defendants must not coordinate the production, marketing, or terms of sale of any products produced or sold by the Divestiture Assets with the production, marketing, or terms of sale of any other products produced or sold by Defendants.

K. Defendants must appoint, subject to approval of the United States in its sole discretion, a person or persons to oversee the Divestiture Assets. Such person or persons will be responsible for Defendants' compliance with this Section VI, for managing the sales and operations of the Divestiture Assets separately from Defendants' other operations, and for ensuring the preservation of the Divestiture Assets for the duration of this Stipulation and Order. In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States in its sole discretion, a replacement within 10

business days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

L.  Within 20 calendar days after the entry of this Stipulation and Order, Defendants will inform the United States of the steps Defendants have taken to comply with this Stipulation and Order.

## VII. DURATION OF OBLIGATIONS

Defendants' obligations under Section VI of this Stipulation and Order will expire upon the completion of the divestiture required by the proposed Final Judgment or unless otherwise ordered by the Court. In the event that (1) the United States has withdrawn its consent, as provided in Paragraph V.A of this Stipulation and Order; (2) the United States voluntarily dismisses the Complaint in this matter; or (3) the Court declines to enter the proposed Final Judgment, the time has expired for all appeals of any ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, Defendants are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order will be without prejudice to any party in this or any other proceeding.

Dated: June 17, 2025

Respectfully submitted,

| FOR PLAINTIFF<br>UNITED STATES OF AMERICA: | FOR DEFENDANT<br>SAFRAN S.A.: |
|---|---|

/s/
DAN MONAHAN
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth St. NW, Suite 8700
Washington DC 20530
Telephone: 202-598-8774
Email: daniel.monahan@usdoj.gov

/s/
JOHN J FEDELE
DC Bar #976582
Baker McKenzie LLP
815 Connecticut Avenue NW
Washington, DC 20037
Telephone: 202-835-6144
Email: john.fedele@bakermckenzie.com

FOR DEFENDANT
RTX CORPORATION:

/s/
BRIAN BYRNE
DC Bar # 449881
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue NW
Washington, DC 20006-4078
Telephone: 202-974-1850
Email:  bbyrne@cgsh.com

# **ORDER**

IT IS SO ORDERED by the Court, this _____ day of  _____, _____.

_____
United States District Judge

## Schedule A

| | |
|---|---|
| SR. ELECTRO-MECHANICAL DESIGNER | SafranEDA Irvine, CA |
| SR PROJECT ENGINEER | SafranEDA Irvine, CA |
| SR PROJECT ENGINEER | SafranEDA Irvine, CA |
| SR. ENGINEERING PROJECT ASSISTANT | SafranEDA Irvine, CA |
| SR. ELECTRONICS TECHNICIAN | SafranEDA Irvine, CA |
| PR SYSTEMS ENGINEER | SafranEDA Irvine, CA |
| SENIOR ACCOUNTANT | SafranEDA Irvine, CA |
| PR SYSTEMS SAFETY ENGINEER | SafranEDA Irvine, CA |
| CONTRACTS MANAGER | SafranEDA Irvine, CA |
| DIRECTOR OF PROGRAM MANAGEMENT (ELLINGTON) | SafranEDA Irvine, CA |
| MECHANICAL ENGINEER | SafranEDA Irvine, CA |
| Sr. Program Manager | SafranEDA Irvine, CA |
| SR QUALITY ENGINEER | SafranEDA Irvine, CA |
| DIRECTOR - ENGINEERING (ELLINGTON) | SafranEDA Irvine, CA |
| SR STRESS ENGINEER | SafranEDA Irvine, CA |
| SR. SUPPLIER RELATIONSHIP MANAGER | SafranEDA Irvine, CA |
| SR. MECHANICAL ENGINEER | SafranEDA Irvine, CA |
| SR. ELECTRONICS TECHNICIAN | SafranEDA Irvine, CA |
| PR SYSTEMS ENGINEER | SafranEDA Irvine, CA |
| SR ELECTRICAL ENGINEER | SafranEDA Irvine, CA |